**Bernard H. DORNBUSCH, Petitioner,**

v.

**COMMISSIONER OF INTERNAL
REVENUE SERVICE,
Respondent.**

**Karl L. Dahlstrom, Appellant.**

No. 86–4722.

United States Court of Appeals,
Fifth Circuit.

Nov. 9, 1988.

Karl L. Dahlstrom, College Station, Tex.,
pro se.

Michael L. Paup. Chief, Appellate Sec.,
Dept. of Justice, Roger M. Olsen, Asst.
Atty. Gen., Robert E. Lindsay, Reviewer,
Alan Hechtkopf, Atty., Washington, D.C.,
for C.I.R.

Before CLARK, Chief Judge,
REAVLEY and GARWOOD, Circuit
Judges.*

PER CURIAM:

This case is an attempted appeal from a criminal contempt sentence imposed by the Tax Court on a witness, appellant Dahlstrom, not a party to the Tax Court proceedings in connection with which the contempt arose. Appellate venue lies in the Court of Appeals for the District of Columbia under the second sentence of 26. U.S.C. § 7482(b)(1), since none of subparagraphs (A) through (E) of the first sentence of section 7482(b)(1) is applicable and the government has not given written consent to venue in this Court under section 7482(b)(2). We therefore previously granted the government's motion to dismiss the appeal on this ground. We denied appellant's request to transfer the case to a court of appeals of proper venue, as we considered ourselves bound by *William L. Becker v. Commissioner*, 716 F.2d 285, 286 (5th Cir.1983), which held that because "the tax code contains no provision for transfer of tax cases to other circuits," therefore "the result of appealing to the wrong court of appeals ... is dismissal." We thereafter recalled the mandate in order to consider whether we should continue to follow *William L. Becker*, as it did not address 28 U.S.C. § 1631, authorizing transfers of appeals from one court of appeals to another to cure jurisdictional defects, or decisions such as *Georgia–Pacific Corp. v. F.P.C.*, 512 F.2d 782 (5th Cir.1975), holding that where a circuit court has jurisdiction but not venue it has "the inherent power to transfer a petition for review of an agency

* The panel to which this case was assigned originally included Judge Hill. Due to Judge Hill's death, Judge Reavley has replaced him on this panel.

ruling to a circuit with proper venue." *Id.* at 783. We now conclude that we do have the power to transfer this case to a circuit court with proper venue and that insofar as *William L. Becker* holds to the contrary it should no longer be followed.[1]

■ The government argues that we have no authority to transfer the case to a court of appeals of proper venue because section 1631[2] authorizes transfer only where the transferor court lacks jurisdiction and, although we are not the court of proper venue, we do have jurisdiction over the appeal pursuant to 26 U.S.C. § 7482(a) and the decision in *Industrial Addition Ass'n v. Commissioner*, 323 U.S. 310, 65 S.Ct. 289, 89 L.Ed. 260 (1945). The government recognizes the holdings, such as our decision in *Georgia–Pacific*, that where we have jurisdiction though not venue we have inherent power to transfer to a circuit court having venue, but it argues that any such implied power was impliedly negated by the enactment of section 1631 in 1982 because section 1631 mentions only transfer for want of jurisdiction and does not speak to transfer for want of venue. We reject the government's argument and hold that we are authorized to transfer the case.

It is true, as the government argues, that section 1631 speaks of transfers from courts not having jurisdiction and does not expressly mention transfers from courts having jurisdiction but not having venue. The government also correctly points out that under sections 7482(a) and (b)(2) all the courts of appeals (except the Court of Appeals for the Federal Circuit) have at least potential jurisdiction to review decisions of the Tax Court and that the provisions of section 7482(b), specifying the particular court of appeals to which appeal lies, have been held to fix venue rather than jurisdiction as such. *Industrial Addition Ass'n.* Nevertheless, it is not entirely clear to us that "jurisdiction" as used in section 1631 was intended to have such a limited meaning. Even after the decision in *Nash–Breyer Motor Co. v. Burnet*, 283 U.S. 483, 51 S.Ct. 549, 550, 75 L.Ed. 1180 (1931), indicated that the predecessor to section 7482(b) was a venue, rather than a strictly jurisdictional, provision, courts continued to refer to it in jurisdictional terms. *See, e.g., Ayer v. Commissioner*, 63 F.2d 231, 233 (2d Cir.1933) ("the petition was filed in the wrong circuit, and ... we have no jurisdiction"); *Turner's Estate v. Helvering*, 68 F.2d 759, 761 (D.C.Cir.1934) ("[T]he present appeal should have been taken to the Court of Appeals of the Third Circuit and not to this court. The appeal is therefore dismissed for want of jurisdiction."). Thus, it is not beyond the realm of possibility that Congress used "jursidiction" in section 1631 in a broad, general, nontechnical sense rather than in the more constricted, specific sense in which jurisdiction is distinguished from venue. The legislative history of section 1631 is fully consistent with such a broad, nontechnical reading of section 1631.

Section 1631 was enacted as section 301(a) of the Federal Courts Improvement Act of 1982 (FCIA). As the District of

---

1. We recognize, of course, that one panel of this Court "cannot disregard the precedent set by a prior panel." *See, e.g., Wilson v. Taylor*, 658 F.2d 1021, 1034 (5th Cir.1981). This opinion has been formally circulated to all active judges of this Court prior to its release, calling attention to this panel's proposed departure from *William L. Becker.* None of the judges having objected or requested that the case be taken en banc, this panel concludes that it is authorized to depart from *Becker. Cf. Koonce v. Quaker Safety Products & Mfg.*, 798 F.2d 700, 706 n. 8 (5th Cir.1986); *Affholder, Inc. v. Southern Rock, Inc.*, 746 F.2d 305, 311 (5th Cir.1984).

Neither section 1631 nor the *Georgia–Pacific* line of cases was in any way brought to the attention of the *William L. Becker* panel.

2. Section 1631 provides:

"**Transfer to cure want of jurisdiction**

"Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."

Columbia Court said in *Alexander v. C.I.R.*, 825 F.2d 499, 501 (D.C.Cir.1987):

"The purpose of the FCIA was 'to enhance citizen access to justice.' S.Rep. No. 275, 97th Cong., 1st Sess. 1 (1981). The legislative history of section 1631 itself is not extensive. However, it is abundantly clear that Congress intended that 'a case mistakenly filed in the wrong court [should] be transferred as though it had been filed in the transferee court on the date in which it was filed in the transferor court.' 128 Cong.Rec. 3572 (1982)."

The legislative history of section 1631 does not expressly address venue, and in that circumstance the intent to rescue cases "mistakenly filed in the wrong court" would seem to encompass instances where the court was wrong for lack of venue just as readily as instances where it was wrong for lack of jurisdiction. Indeed, almost no reason can be conceived why Congress would wish to grant to a court without jurisdiction the power to transfer a case, while at the same time not granting such power to a court having jurisdiction but lacking venue. Only one possible reason for making such a distinction suggests itself to us, and that is that Congress assumed that the courts already had power to make such a transfer in instances where they had jurisdiction but not venue, and hence felt it was unnecessary to address venue in section 1631. Since there was no statute giving the courts of appeals the general power to transfer cases in all such instances, if Congress had this in mind it accordingly must have had reference to an implied power.

Viewed from a perspective focusing on the status of cases in the putative transferor court of appeals, the authorities prior to 1982 can generally be broken down into the following categories.

There are cases in which the transferor court lacked jurisdiction in the technical sense. Here the circuits appear to have been split. Thus, the Ninth Circuit concluded that it had jurisdiction to transfer even though it lacked subject matter jurisdiction. *See Pearce v. Director*, 603 F.2d 763, 771 (9th Cir.1979). The First Circuit and the Third Circuit concluded that there was no such transfer power where the transferor court lacked subject matter jurisdiction. *Dantes v. Western Foundation Corporation Ass'n*, 614 F.2d 299, 301 & n. 2 (1st Cir.1980) (but recognizing that the result might be otherwise if the transferor court had jurisdiction and merely lacked venue); *Atlantic Ship Rigging Co. v. McLellan*, 288 F.2d 589, 590–91 (3d Cir. 1961) (relevant statute "is jurisdictional and ... not merely a venue provision").

There are cases in which the transferor court had both jurisdiction and venue. Here the authorities which address the point appear to be unanimous in finding an inherent power to transfer. *See, e.g., American Telephone & Telegraph Co. v. F.C.C.*, 519 F.2d 322, 325 (2d Cir.1975).

Finally, there are cases in which the transferor court had jurisdiction but lacked venue. There are some decisions in this category which dismissed the attempted appeal without addressing the question of transfer. *See, e.g., Nash–Breyer Motor* (affirming court of appeals' dismissal of appeal); *Ayer; Turner's Estate*. However, of the circuits which expressly addressed the question, all appear to have held that there was an inherent power of transfer. This Circuit so held in *Georgia–Pacific*, and we reiterated *Georgia–Pacific*'s validity in this respect in *Tenneco Oil Co. v. Environmental Protection Agency*, 592 F.2d 897, 900 (5th Cir.1979). Similar holdings were made in *N.L.R.B. v. Wilder Mfg. Co.*, 454 F.2d 995, 998 & n. 12, 999 (D.C.Cir.1971); *Panhandle Eastern Pipe Line Co. v. F.P.C.*, 343 F.2d 905, 908 (8th Cir.1965); and *Panhandle Eastern Pipe Line Co. v. F.P.C.*, 337 F.2d 249 (10th Cir.1964). Since 1982, other circuits have also recognized this implied power, relying on pre–1982 authority. *Edward M. Becker v. C.I.R.*, 852 F.2d 524, 526 (11th Cir.1988) (citing our *Tenneco Oil*); *Clark & Reid Co., Inc. v. United States*, 804 F.2d 3, 4, 7 (1st Cir.1986). *See also Alexander*, 825 F.2d at 501. We are not aware of any cases decided prior to the enactment of section 1631 in which a court of appeals which expressly addressed the matter held

that it had no authority to transfer a case, over which it had jurisdiction but lacked venue, to another court of appeals having both jurisdiction and venue.[3]

Thus, it is possible that when Congress enacted section 1631 it concluded that there was need for a provision respecting transfers when the transferor court lacked jurisdiction, but that there was no such need where the transferor court had jurisdiction but merely lacked venue. If this be the case, then the enactment of section 1631 could not reasonably be read as an implied denial of power to transfer where the transferor court had jurisdiction but merely lacked venue; rather, the appropriate reading would be that section 1631 was impliedly confirmatory of the inherent power to transfer in such an instance.

We are thus unpersuaded by the government's argument that section 1631 impliedly extinguishes the implied power of courts of appeals to transfer in an instance such as this. Our conclusion in this respect is strengthened by the government's recognition in its brief that in section 1631 "Congress sought to eliminate not only the need to file in both courts, but also the risk of filing in the wrong court." Under the government's interpretation of section 1631, however, Congress would not have eliminated the risk of filing in the wrong court, but would rather have enhanced that risk by denying to courts of appeals their previously exercised implied power of transfer in instances where they had jurisdiction but lacked venue. Moreover, the government's argument in this respect is likewise inconsistent with the statement in its brief that "Congress did not appear to have wrong venue in mind in drafting section 1631." Indeed, except as noted in the following paragraph, nothing in the legisla-

tive history of section 1631 expressly speaks to venue.

The government relies on a reference in the Senate Report respecting section 1631 to hearings held three years earlier concerning proposed H.R. 11276. The reference is merely "for future discussion," and the Senate Report does not itself contain any of the matter on which the government relies. S.Rep. 97-275, 97th Cong., 2d Sess. at 11 & n. 15, 30 (1982), U.S.Code Cong. & Admin.News 1982, 11. What the government relies on is contained in the referenced three year earlier hearings. These earlier hearings[4] included correspondence between Judge Harold Leventhal of the District of Columbia Circuit and the Chairman of the House Judiciary Subcommittee. In that correspondence, Judge Leventhal suggested an amendment to then pending H.R. 11276, which contained provisions somewhat similar to the later enacted section 1631, so that H.R. 11276 would expressly refer to instances where the transferor court lacked venue as well as where it lacked jurisdiction. However, no provision respecting transfer was enacted at that time. When subsequently section 1631 was introduced, it did not contain any references to venue. The legislative history of section 1631, as such, contains not only no explanation for this omission, but not even any recognition of its existence. We think the government's reliance on the 1978 hearings respecting H.R. 11276 is misplaced, and that this is entirely too slender a reed to support the government's contention that section 1631 impliedly revokes the previously recognized implied power of federal courts of appeals to transfer a case over which they have jurisdiction but lack venue to a court of appeals which has both.

---

3. One exception must be made to this statement. Citing a lack of statutory authority, we declined to make a transfer in such a case in *Gulf Oil Corp. v. F.P.C.*, 330 F.2d 824 (5th Cir.1964). However, in *Georgia–Pacific*, we reconsidered this position and expressly declined to follow *Gulf Oil*, and we later reaffirmed *Georgia–Pacific* in *Tenneco Oil*. *Georgia–Pacific* was decided several years prior to the introduction of section 1631 or any of its antecedents. Neither *Georgia–Pacific* nor *Tenneco Oil* were decided by the en banc court, and hence one might question

the authority of those panels to depart from *Gulf Oil*. However, no such doubt is reflected in the opinions themselves, and when section 1631 was under consideration it is likely that such a subtlety escaped congressional notice.

4. *Judicial Housekeeping: Hearing Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary*, 95th Cong., 2d Sess. at 372–90 (1978).

We also observe that nothing in the referenced material concerning H.R. 11276 is inconsistent with the hypothesis that Congress in enacting section 1631 did not feel it necessary to speak to venue, since circuits which had addressed the matter had unanimously held that there was an inherent power of transfer to a proper court where the transferor court had jurisdiction but not venue.

We further note that the government's position in this respect has been expressly rejected in both *Edward M. Becker* and *Alexander*. While we reached a contrary result in *William L. B ʹ:er*, we did so, as previously noted, without addressing either section 1631 or the inherent power to transfer doctrine exemplified by decisions such as our own *Georgia–Pacific* opinion. We now elect to follow the path of *Alexander* and *Edward M. Becker*, rather than that of *William L. Becker*.[5] We therefore hold that we have the power to transfer this case to the United States Court of Appeals for the District of Columbia Circuit, a court of proper jurisdiction and venue. We have this power either under section 1631, or, if it be technically inapplicable because this Court is an improper forum due only to a want of venue rather than a want of jurisdiction, then we have this power under the inherent or implied power doctrine of *Georgia–Pacific* and related cases. It is not necessary to determine which, because we hold that the same "in the interest of justice" standard for the exercise of the power would be applicable in either instance.

■ We conclude that it is in the interest of justice to transfer this appeal to the United States Court of Appeals for the District of Columbia Circuit.[6] Accordingly, our prior order dismissing the appeal is withdrawn and the appeal is ordered transferred to the District of Columbia Circuit.

APPEAL TRANSFERRED.

---

5. These are the only three decisions of which we are aware that address this precise question, except for a one-paragraph unreported order of the Sixth Circuit in *Alford v. Commissioner* 805 F.2d 1033 (6th Cir.1986). The order in *Alford* dismisses the appeal, citing *William L. Becker,* but does not reflect whether the appellant requested a transfer or whether the Court considered the possibility of transfer; nor does *Al-* ford cite section 1631 or any of the decisions dealing with the implied power to transfer.

6. Appellant has been proceeding *pro se,* and there is nothing to indicate that he made anything other than an understandable, good faith mistake in appealing to this Court, in which his residence is located.